(No. 3716— ▬▬▬▬▬▬

Jelmar Olson, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed May 12, 1943.*

William G. Thon, for claimant.

George F. Barrett, Attorney General; William L. Morgan, Assistant Attorney General, for respondent.

F�ɪsʜᴇʀ, J.

Complaint was filed on May 13, 1942, and the record completed on May 5, 1943. The complaint alleges that on August 4, 1941, and for many years prior thereto, claimant was employed by the State of Illinois, Department of Public Welfare, as a painter at the Illinois Eye & Ear Infirmary, Chicago, Illinois. That on August 4, 1941, while in the performance of his duties, claimant fell from a ladder or scaffolding and was injured. His injuries consisted of a fracture of the skull, a fractured shoulder blade and a number of fractured ribs. First aid was given, and claimant was removed to the Illinois Research Hospital for treatment. That all medical and hospital bills have been paid by respondent. That his earnings for a year prior to the date of said accident was the sum of $2,860.00.

Claimant further alleges that no compensation of any kind has been paid to claimant by respondent; that claimant had no children under the age of sixteen years. Claimant seeks an award in accordance with the provisions of the Workmen's Compensation Act for his injuries.

The record consists of the complaint; transcript of evidence, report of the Illinois Eye & Ear Infirmary, by Dr. John B. Cipriani, report of Dr. Irving J. Speigel, M. D., dated April 20, 1942, report of Dr. Percival Bailey, dated February 3, 1943, stipulations, statement, brief and argument and reply

brief on behalf of claimant, and statement, brief and argument on behalf of respondent.

Claimant and respondent were operating under the provisions of the Illinois Workmen's Compensation Act, and all jurisdictional requirements have been met. The allegations of the complaint are substantially sustained by the evidence, except that claimant's claim of permanent disability appears to be partial and not complete.

It was stipulated that Dr. Percival Bailey, 912 South Wood Street, Chicago, Illinois, examine the claimant, and that his report of this examination be prima facie evidence as to the condition of claimant at the time of said examination.

Dr. Bailey reported that he examined the claimant on February 2, 1943, and from his examination concludes—

"This complaint of his is a subjective complaint, which is difficult to evaluate. My impression is one based on very superficial contact with him. Such a complaint as he has might very well follow such an injury to the brain, but very rarely persists for such a long period of time. The description of his symptom points to some irritation of the vestibular apparatus, and I would suggest that he be sent to an otologist for a thorough examination of his vestibular apparatus, which we are not equipped to make in the neurological clinic. This man does not appear to me, and did not claim to me, that he is totally disabled. He maintained that only was he unable to work, when his work demanded that he bend his head backward and look upward. Otherwise he feels well and desires to work."

Dr. Irving J. Speigel, M. D., Resident in Neurology and Neurological Surgery, University of Illinois, College of Medicine, reported on April 20, 1942, as follows:

"I have this day examined Mr. Jalmer Olson who was admitted to the hospital on August 6th, 1941. Neurological examination at this time reveals no objective findings. However he still becomes dizzy when he looks up or down for a protracted length of time. This is not an infrequent occurrence in elderly patients following a cranio-cerebral injury. I am fairly convinced of this man's sincerity. Our records are at your disposal."

By stipulation filed herein on May 4, 1943, it is agreed between the parties hereto, by their respective attorneys of record, that the following facts may be considered by the court in arriving at its decision.

"That the claimant is not completely disabled but only partially disabled from following his usual occupation of painter and that claimant is now employed by the State of Illinois as a watchman at the State Training School for Girls located at Geneva, Ill., and is able to earn the sum of $75.00 per month as such watchman and is further allowed his maintenance at said school which maintenance is computed and valued at the sum of $30.00 per month."

We conclude from the evidence that claimant is entitled to the benefits of the Workmen's Compensation Act.

At the time of the injury claimant was earning $55.00 per week. He is now able to earn and is earning $24.25 per week. Claimant is entitled to receive from respondent (Section 8, paragraph d) Illinois Workmen's Compensation Act, fifty per centum of the difference between the average amount which he earned before the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident, subject to the limitations as to time and amounts fixed in paragraphs (b) and (h) of this section; the amount so payable to be increased 10% (Section L) for injuries occurring after July 1, 1939. The difference between claimant's earnings before the accident and his present earnings amounts to $30.75 per week, 50% of which is $15.37, plus 10%, or $16.90. Claimant's rate of compensation is, therefore, the maximum of $16.50 per week.

The record indicates that the duration of claimant's disability is indefinite and, therefore, the payments herein awarded claimant shall cease when and if claimant is able to resume his former occupation or is able to engage in some other occupation or business whereby his income is equal to his earnings before the injury occurred, or when the maximum payment has been reached, whichever first occurs.

Claimant asks that he be granted a lump sum award. Section 9 of the Illinois Workmen's Compensation Act provides that payment in a lump sum may be made "if upon proper notice to the interested parties *and a proper showing* made before such commission or any member thereof it appears to the best interest of the parties that such compensation be so paid, the commission may order the commutation of the compensation * * *."

There is no showing whatever in the record that it is to the interest of the parties that a lump sum payment be made. Also, in view of the fact that claimant's disability is indefinite and may terminate at any time, we cannot at this time grant the request for a lump sum payment. However, should claimant desire, and be able to make the necessary showing for a lump sum payment, he can do so by petition and hearing thereon, and, for this purpose, we retain jurisdiction of this cause. Claimant was injured on August 4, 1941, and his rate of compensation for temporary total disability is $16.50 per

# 472

week, the same amount he is entitled to receive for permanent partial disability. It is, therefore, immaterial when plaintiff returned to work or was able to return to work. The record does not show when he was able to return to work, but it did show that he did return to work on May 1, 1943, and that his earnings are now $105.00 per month.

Claimant is, therefore, entitled to receive from respondent, and an award is hereby entered in favor of claimant for the sum of Forty-four Hundred Dollars ($4,400.00), payable as follows:

$1,518.00 accrued up to and including May 10, 1943, is payable forthwith;
$2,882.00 payable in weekly installments of $16.50 each for 174 weeks; and a final payment of $11.00.

This award being subject to the provisions of an Act entitled, "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved June 30, 1941, and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Revenue Fund in the manner provided for in such Act.